```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
                        FORT WORTH DIVISION

WILLIAM NULL, ET AL.            §
                                §
VS.                             §   CIVIL ACTION NO.4:09-CV-296-Y
                                §
BOBBY EASLEY, ET AL.            §
```

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Pending before the Court is the Defendants' Motion to Dismiss (doc. #18). After review, the Court concludes that defendant Bobby Easley, who died before this case was commenced, is without capacity to be sued. The Court further concludes that Plaintiffs' allegations in support of their claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and claim of fraud are insufficient. As a result, all claims against Bobby Easley, as well as Plaintiffs' fraud and RICO claims will be dismissed. The motion also seeks to have Plaintiffs' conspiracy claim dismissed, but the Court will deny the motion as to this claim because Plaintiffs have offered sufficient factual allegations in support of it. Finally, the motion does not sufficiently argue for dismissal of Plaintiffs' claims for conversion, theft, and constructive trust. Consequently, the motion will be denied as to these claims as well.

I. Background

According to Plaintiffs' second amended complaint, Bobby Easley was employed in the roofing industry. Plaintiff William Null is the owner and operator of several construction-services

companies, including Residential & Commercial Exteriors, Inc. ("R&C"), which provide roofing services. In October 2005, Easley approached Null and proposed that the two form a partnership ("the Partnership"), with each owning a fifty-percent interest, that would provide roofing services to owners of property damaged by hurricane Katrina.

Eventually, Null and Easley agreed to transfer all of the Partnership's assets to R&C. Easley received 5,000 shares of R&C common stock, Null retained 5,000 shares, and the two agreed to continue operating R&C as its sole shareholders. Easley provided onsite management and supervision of roofing projects. In his supervisory capacity, Easely hired his son, Robert. Easley also placed his daughter, Christine, on R&C's payroll, although Null did not know about this decision and Christine was never employed by, nor did she provide services to, R&C.

Null and Easley then agreed to form another company, Commercial Roofers, LLC ("Commercial"). Both Commercial and R&C provided roofing services throughout 2006 and 2007. In early 2008, Bobby Easley was diagnosed with cancer, causing him to take a reduced role in the companies' operations. Consequently, Null became more involved in onsite management and payroll. It was then that Null noticed that various transfers of funds had been made to Bobby, Robert, and Christine, as well as to Bobby Easley's sister Elizabeth Cox. Null also noticed that company resources, including

2

material, labor, and a company credit card, had been used for these individuals' personal benefit.  After Bobby died, Null claims to have performed an investigation that shows the Easleys and Cox embezzled hundreds of thousands of dollars from R&C and Commercial.  As a result, Null, R&C, and Commercial filed this suit.

II.  Discussion

    A.  Standard for Dismissal

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  This rule must be interpreted in conjunction with Rule 8(a), which sets forth the standard for pleading a claim for relief in federal court.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). Rule 8(a)(2) calls only for "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  The plaintiff is aided by the requirement that, in reviewing the sufficiency of his pleadings, a court must indulge "the assumption that all the [factual] allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555; *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). That is, the Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *See Kaiser Aluminum & Chem. Sales*, 677 F.2d at 1050.

    B. Analysis

      1. Capacity

Defendants first argue that the claims against Bobby Easley must be dismissed because he is deceased.  The capacity of an individual to sue or be sued is determined by the law of the individual's domicile.  Fed. R. Civ. P. 17(b)(1).  According to Plaintiffs' amended complaint, Easley was a citizen of the State of Arkansas at the time of his death.  (Am. Compl., doc. #15, at p.1, ¶4.) Defendants argue, and Plaintiffs concede, that under Arkansas

4

law a deceased person does not have the capacity to be sued. *See Am. Insurers' Life Ins. Co. v. First Nat'l Bank*, 236 Ark. 361, 370, 367 S.W.2d 97, 102 (Ark. 1963) (noting that the executor of an estate stands before the Court in the position the decedent would have occupied if alive and that the decedent's obligations may be enforced against the estate). Rather, a claim against a deceased person must proceed against the person's estate.

Defendants argue that they have named Bobby Easley as a defendant in this case because no administrator or executor has been appointed to represent his estate. Thus, according to Defendants, they should be allowed to proceed against Bobby Easley individually until such appointment is made. But Defendants have established that it is improper under Arkansas law to name a deceased person as a defendant, and Plaintiffs have pointed to no authority that would allow the use of the deceased as a place holder until a representative of the estate has been appointed.

    2. Conspiracy

        a. Christine Easley

Defendants contend that the complaint's allegations as to Christine Easely's participation in a civil conspiracy are insufficient in that they do no more than allege that she received and accepted funds from R&C and Commercial. According to the complaint, Bobby Easley placed Christine "on the payroll" of both

5

R&C and Commercial. (Am. Compl. at ¶35.[1]) Additionally, funds were wired to Christine's bank account from October 2005 through October 2007, including transfers of $3,000 to her account on October 19, 2005, and on January 6, 2006. (*Id.* at ¶36.) Christine received these funds despite the fact that she "did not provide any labor or services for the benefit of either Commercial or R&C" and no "appropriate corporate action [was] taken . . . authorizing the retention of Christine Easley as an employee or an agreement to compensate her." (*Id.* at ¶35, 72, 73.)

Defendants argue that these allegations are insufficient to support the claim that Christine Easley participated in a conspiracy to defraud R&C and Commercial or embezzle funds from the companies. Defendants insists that although these allegations show that Christine received certain funds, they do not show that she entered into any agreement. In so arguing, Defendants rely on *Bell Atlantic Corp. v. Twombly*, in which the United States Supreme Court concluded that allegations of "parallel conduct" that is "more likely explained by lawful, un-choreographed, free-market behavior" are insufficient to state a conspiracy claim. *See Iqbal*, 129 S. Ct. at 1950.

But Plaintiffs' allegations regarding Christine do not recount mere parallel conduct. Instead, it is alleged that Bobby Easley

---

[1] Many of the facts cited in the Court's analysis of the conspiracy claim are from the allegations made by Plaintiffs in connection with their RICO claim. Nevertheless, they are factual allegations regarding Defendants' actions.

6

caused payroll distributions to be made from R&C and Commercial to Christine, and transferred by wire funds from these companies to Christine, despite the fact that she had not performed any work for the companies and the payments to Christine were not properly authorized. Rather than parallel independent conduct, Plaintiffs allege a course of conduct involving both Bobby and Christine. And these acts are not more likely explained by lawful, free-market conduct. Again, the payments were made to Christine despite the fact she had provided nothing of benefit to R&C or Commercial.

### b.  Elizabeth Cox

Defendants similarly challenge the conspiracy allegations against Elizabeth Cox, arguing that although it is alleged that she received funds and used an R&C credit card for her personal benefit, there are no allegations to show that such actions were part of an agreement or a conspiracy. Plaintiffs allege that Bobby Easley caused a check to be issued from R&C to Cox in the amount of $35,000 with the notation that the money was for "repayment of a start-up loan." (Am. Compl. at 96, 97.)  It is further alleged that no loan was ever made by Cox to R&C. (*Id.* at 99.)  Just as with the claims against Christine Easley, the fact that two parties--both Cox and Bobby Easley--are involved supports the inference that an agreement had been entered into to remove funds from R&C.

7

    c. Robert Easley

Finally, Defendants argue that the allegations are insufficient to support the inference that Robert Easley was part of a conspiracy. But Plaintiffs have alleged that Bobby Easley used his position at R&C to hire his son Robert and then caused Robert to be paid far in excess of the compensation he was supposed to receive. (Am. Compl. at 33-34.) Plaintiffs also allege that in an effort to embezzle funds from R&C, Bobby Easley would open bank accounts in his name but use Robert Easley's social security number. (*Id.* at 62.) And Plaintiffs cite the specific example of Bobby Easley's transferring $218,500 in R&C funds to a personal bank account. (Am. Compl. at 128-131.) Thus, there are some specific factual allegations that support the conclusion that Robert Easley acted in concert with Bobby Easley to embezzle funds from R&C and Commercial.

    3. Racketeer Influenced and Corrupt Organizations

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68, creates a private cause of action to recover for injuries caused by "racketeering activity." *See Sedima v. Imrex Co.*, 473 U.S. 479, 481 (1985) (discussing RICO). RICO defines "racketeering activity" in terms of certain criminal conduct and prohibits "the use of income derived from a 'pattern of racketeering activity' to acquire an interest in or establish an

enterprise engaged in or affecting interstate commerce; the acquisition or maintenance of any interest in an enterprise 'through' a pattern of racketeering activity; conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and conspiring to violate any of these provisions." *Id.* at 482-83.

In the complaint, Plaintiffs cite as the basis of their claim section 1962(d), which prohibits participation in a conspiracy to violate section 1962's other subsections. They do not, however, clarify which of the other subsections Defendants allegedly conspired to violate. Defendants briefed their motion to dismiss in terms of section 1962(c), and Plaintiffs have not challenged this in their response brief. To state a claim for violation of section 1962(c) a plaintiff must allege: (1) conduct (2) of an "enterprise" (3) through a "pattern" (4) of racketeering activity. *Sedima*, 473 U.S. at 496. Defendants argue that Plaintiffs have not sufficiently alleged the existence of an enterprise and have not sufficiently alleged Defendants' participation in the conduct of an enterprise.

"The existence of an enterprise is an essential element of a RICO claim." *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 440 (5th Cir. 1987). In the context of a RICO claim, "enterprise" means an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals

9

associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "The enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.'" *Atkinson*, 808 F.2d at 441 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Additionally, the enterprise must be a separate entity from the person culpable for the RICO violation. *See id.* at 439; *see also Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) ("To state a claim under subsection (c), a plaintiff must demonstrate, inter alia, that the RICO person is distinct from the RICO enterprise.").

Plaintiffs' allegations do not identify an enterprise. Plaintiffs note that Bobby Easley and Robert Easley acted as agents of R&C and Commercial. But there is no allegation that it was the affairs of these companies that were being conducted through the alleged racketeering activity. Plaintiffs have alleged a conspiracy between Bobby Easley and the other individual defendants. But in light of the Court's analysis of the conspiracy claim it appears more precisely characterized as involving separate agreements between Bobby Easley and each individual defendant, as there are no factual allegations linking the actions of Robert Easley, Christine Easley, and Elizabeth Cox. The mere allegation of a conspiracy to defraud or embezzle does not sufficiently allege, however, the existence of an enterprise, as an enterprise requires more than a common purpose. An enterprise: "(1) must have

10

an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit shown by a hierarchical or consensual decision making structure." *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 433 (5th Cir. 1990). Plaintiffs' complaint contains no facts that would support the conclusion that the alleged conspiracy existed apart from the racketeering activity as an ongoing organization with a decision-making structure. And although any one of the individual defendants might be considered an enterprise for RICO purposes, *United States v. Elliot*, 571 F.2d 880, 898 (5th Cir. 1978) (citing 18 U.S.C. § 1961(4)), Plaintiffs have not alleged this. Rather, each of the individual defendants are named as conspirators who sought to commit the predicate acts prohibited by RICO as racketeering activity. Because each individual defendant is named as a violator of section 1962, none may be considered to be the enterprise necessary to Plaintiffs' claim. *See Old Time Enters. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989) ("The violator of section 1962(c) who commits the pattern of predicate racketeering acts must be distinct from the enterprise whose affairs are thereby conducted.").

    4.   Fraud

Defendants argue that Plaintiffs fraud allegations do not meet the specificity requirements imposed by Fed. R. Civ. P. 9(b).

11

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b). Rule 9(b) requires "require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005). Having reviewed the complaint, the Court concludes that Plaintiffs' fraud allegations do not identify any specific statements, the speaker, or when any allegedly fraudulent statement was made. Instead, the fraud claim consists of generalized allegations that Defendants made representations concerning various matters, but no specific statement by a specific defendant is identified. Thus, the Court concludes that Plaintiffs' fraud claim has not been pleaded in conformity with Rule 9(b).

   5.   All Other Claims

The complaint also alleges claims of conversion, theft, and constructive trust against Christine, Robert, and Elizabeth. Defendants' motion to dismiss does not specifically address these claims. One section of the brief in support of the motion generally argues that "the complaint provides [only] conclusory legal allegations and no set of facts against Robert Easley, Christine Easley, and Elizabeth Cox." This broad language might be seen and, indeed, might have been meant, as an attack on all of the

claims against these defendants. But despite this broad language, the substance of the related portion of the brief focuses on the conspiracy claim and briefly argues the fraud claim. Without specific arguments addressing the claims for conversion, theft, and constructive trust, analyzing the allegations, or lack thereof, in light of the governing substantive law, the Court will not order these claims dismissed.

VI.  Conclusion

The Court concludes that Bobby Easley, as a deceased person, does not have the capacity to be sued and, therefore, his being named as a defendant in this suit is improper. The Court further concludes that Plaintiffs' RICO and fraud claims are not supported by sufficient factual allegations. Thus, the motion to dismiss is GRANTED as to the claims against Bobby Easley, the RICO claims, and the fraud claims. However, Plaintiffs' conspiracy claim is plausible in light of the factual allegations in the complaint. And Defendants have not sufficiently argued for dismissal of the claims for constructive trust, conversion, and theft. Hence the motion to dismiss is DENIED as to these claims.

SIGNED: November 18, 2009.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE